Contracts; architectural design services contract; claim for compensation for additional services; redesign work to meet cost reduction requirements; 'Washington, D.C. Zoo.— This case involves claims for compensation for additional services for the design of facilities and plans for the National Zoological Park at Washington, D.C. under contracts (a) for the design of an-innovative special environment “multi-climate” building for various animals and insects (Phase Y), and (b) for the formulation of an area development plan for a sector of the Zoo (Phase VI). Because of the innovative nature of the multi-climate structure, in the negotiations leading up to the contracts it was contemplated that a certain amount of “development” work would be. required during the course of the project and that the Zoo director would supply technical data on the needs and requirements of the animals. It was made clear, however, by the Government officers that plaintiff was obligated to prepare designs for construction within the overall limit set for the combined contracts. It iwas also made clear at the outset that the Zoo director’s enthusiasms for construction of the best possible Zoo would not be sufficient in themselves to authorize increases in the scope of the program, the services to be performed by plaintiff under the contracts, or plaintiff’s fees. The administrative record indicates that the Zoo was not authorized to increase the scope of the contract in any way, and that if the contractor felt the contract was being changed to require additional work, it was a prerequisite for additional compensation that the contractor apply to GSA for an amendment, informing the contracting officer in advance of the proposed additional cost to the Government. Phase V contract was cancelled when work had reached the completed working drawing stage because. plaintiff’s plans for the multi-climate complex resulted in projected costs of more than twice the contract estimate, and defendant exercised its option not to proceed further under Phase VI contract when the contract had progressed through the tentative stage. In filing its administrative claims for addi *821 tional compensation, plaintiff contended that the contracting officer had changed the basic requirements of the contracts by requiring work beyond their scope. In disposing of the claims adversely to plaintiff’s contentions, the GSA Board of Contract Appeals found (1) that certain of the claimed changes were neither imposed by the contracting officer nor by his authorized representatives; that the “directives” came from the director of the Zoo; that the latter did not constitute an authorized representative of the Government to effect changes; that any “directive” from the director to do extra work could not have been considered by plaintiff as a Government-imposed change in basic contract requirements; and that said “directives” were more properly characterized as suggestions or statements of preference. As to the second group of claimed changes, i.e. that plaintiff performed redesign work to meet cost reduction requirements, the Board found (2) that the changes in design to conform to the limitations on construction costs were required by the contract and were not revisions for which defendant was required to compensate plaintiff. As to the third group of claims (3) which the Board classified as those in which the work done by plaintiff could not be deemed to be in pursuance of changes because they were within the scope of the contract’s broad Program of Requirements, refinements thereof developed in the course of performance, or architectural solutions to meet the recommendations of the National Capital Planning Commission, the Board concluded that plaintiff should have anticipated extensive development of specific requirements which were not articulated in the sketchy and broad-brush written Program of Requirements available prior to negotiations and should have taken this into account when it entered into negotiations. The Board deemed the fourth group of claims (4) to be for efforts which were plaintiff’s own architectural solution to problems or purely voluntary acts, neither suggested by the Zoo nor GSA, and hence these could not be variations or changes directed by the contracting officer. In a recommended decision filed January 28, 1974 (reported in full at 19 CCF para. 82798), Trial Judge Miller concluded as to (1) above that the Board’s findings are supported by substantial evi- *822 deuce, including the precise distinction drawn by GSA during the course of the negotiations between the roles of the Zoo director and the contracting officer, when plaintiff was warned on two occasions that it was only the contracting officer and not the Zoo director who was authorized to change the scope of the contract,’ as to (2) above, that the Board correctly interpreted the contract and, to the extent that the Board found that the particular claims were necessitated by additional work to reduce the excessive construction costs, its findings are supported by substantial evidence; as to (3) above, that the Board correctly found that few of the Zoo’s suggestions or refinements, apart from cost reduction, could be considered as outside the realm of what the contractor should have reasonably anticipated as being within the scope of the contracts at the time the contracts were negotiated, and that the Board fairly concluded that if plaintiff thought otherwise it should have brought the matter to the attention of the contracting officer and asked for an amendment before proceeding with the work; as to (4) above, there is substantial evidence to support the Board’s findings. Plaintiff also contended that the contracting officer found plaintiff entitled to recover on 11 of its 19 claims and that therefore the Board had no jurisdiction to consider and reverse that decision. The Board found that the contracting officer’s award of partial compensation was neither a ratification nor an admission of entitlement as a contract right under the revisions clause but was based on equitable grounds alone, in an effort to reach an amicable settlement. Trial Judge Miller concluded that the Board’s findings arc supported by substantial evidence. The Board also ruled as a matter of law that it can consider da novo the subject matter of a contracting officer’s final decisions. Trial Judge Miller concluded that the Board’s ruling in this regard is supported by decisions of this court, including Monroe Garment Co. v. United States, 203 Ct. Cl. 324, 488 F. 2d 989 (1973). Trial Judge Miller also rejected plaintiff’s contention that the administrative record supports claims for breach of contract, and recommended that plaintiff’s petition be dismissed. On July 10, 1974 the court issued the following order:
*823 Before Davis, Judge, Presiding, KuNzig and Bennett, Judges.
“This case comes before the court on defendant’s motion, filed May 15, 1974, requesting that the court adopt, as the basis for its judgment in this case, the recommended decision of Trial Judge Philip B. Miller, filed January 28,1974, pursuant to Buie 166(c), plaintiff having failed to file a request for review by the court and plaintiff’s attorney having-notified the clerk of the court by a letter of May 13, 1974, that plaintiff will not seek such review. Upon consideration thereof, without oral argument, since the court agrees with the trial judge’s recommended decision, it hereby grants defendant’s motion and adopts the said decision as the basis for its judgment in this case.
“it is therefore ordered that plaintiff’s motion for summary judgment be and the same is denied, defendant’s cross-motion for summary j udgment is granted and plaintiff’s petition is dismissed.”